1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# EASTERN DISTRICT OF CALIFORNIA

10

11

NORITH CHIN,

12

                              Petitioner,

                vs.

13

WARDEN, Avenal State Prison,

14

                              Respondent.

15

16

CASE NO. 08 CV 0165 JTM

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254**

Doc. No. 1

17
18
19
20
21
22
23
24
25
26
27

        Norith Chin ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 1, 2008.  (Doc. No. 1, "Pet.")  Petitioner is presently serving an indeterminate sentence of nineteen years to life for his February 1992 conviction in the Orange County Superior Court for one count of second degree murder including an enhancement for the use of a firearm.  The Petition challenges the September 12, 2006 Board of Parole Hearings ("BPH" or "Board") decision denying Petitioner parole.  (Pet. at 1-12.)  Because this court finds Petitioner's claims can be resolved on the existing state court record, Petitioner's request for an evidentiary hearing is **DENIED**.  (Doc. No. 18 at 4.); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  After a thorough review of the Petition, Respondent's Answer (Doc. No. 16, "Ans."), Petitioner's Traverse (Doc. No. 18, "Trav."), and all supporting documents, the court finds Petitioner is not entitled to the relief requested and therefore **DENIES** the Petition.

28

//

**I. Background**

On July 12, 1991, Petitioner and several friends encountered a group drinking beer in the carport area of a Santa Ana apartment complex.  (Pet. Exh. 9 at 2.)  An argument ensued between Petitioner and one of the victim's companions, during which the companion kicked Petitioner.  (Pet. Exh. 9 at 2.)  Petitioner became upset and threatened to kill his assailant before running off.  (Pet. Exh. 9 at 3.)  Petitioner returned a few minutes later with a handgun and gunshots were heard in the carport area.  (Pet. Exh. 9 at 3.)  The unarmed victim was fatally wounded from a gunshot would to the left chest area.  (Pet. Exh. 9 at 3.)  Another of the victim's friends told Petitioner he had shot the wrong person.  (Pet. Exh. 9 at 3.)  Petitioner threatened the friend, then walked away with the gun in hand.  (Pet. Exh. 9 at 3.)  Four days later, Petitioner and his brother asked a Long Beach acquaintance to say he and Petitioner had been in Las Vegas at the time of the shooting.  (Pet. Exh. 9 at 3.)  Petitioner supplied the acquaintance with written details of the proposed alibi and told police the alibi story.  (Pet. Exh. 9 at 3.)  Petitioner's acquaintance told police about Petitioner's request for an alibi witness and give them the note.  (Pet. Exh. 9 at 3.)  Petitioner was arrested on July 19, 1991 and convicted by a jury in February 1992.  (Pet. at 2, 5C.)

Petitioner was first considered and denied for parole by the Board in August 2003.  (Pet. at 5A.)  Following his second parole hearing, held September 12, 2006, the Board found Petitioner unsuitable for release on parole based on several factors, including:

> 1. The commitment offense [was] committed in an especially cruel, dispassionate, and calculated manner demonstrating an exceptionally callous disregard for human suffering;
> 2. Petitioner [had] engaged in limited programming with no vocational certifications;
> 3. Petitioner [had] a record of institutional misconduct;
> 4. Petitioner's psychological evaluation [was] not totally supportive; and
> 5. Opposition to Petitioner's release on parole was expressed by the Santa Ana Police Department and the Orange County District Attorney's Office.

(Pet. Exh. 9 at 1-2.)  In February 2007, Petitioner filed a habeas petition with the Orange County Superior Court challenging the Board's denial of parole, alleging: 1) the Board's decision was based on a mischaracterization of his commitment offense; 2) the Board's reliance on immutable circumstances violated his due process rights; 3) the facts showed he was suitable for parole; and 4) he had ineffective assistance of counsel at the parole hearing.  (Pet. Exh. 9.)  The superior court denied

1  the petition in March 2007, concluding the Board's decision was "supported by some evidence in the

2  record" and did not constitute an abuse of discretion. (Pet. Exh. 9 at 2-6.) Further, Petitioner's claim

3  of ineffective assistance of counsel was determined to be without merit. (Pet. Exh. 9 at 6-7.) In May

4  2007, Petitioner submitted his petition to the California Fourth Appellate District, which summarily

5  denied his request. (Pet. Exh. 10.) Petitioner pursued the same relief before the California Supreme

6  Court which, in turn, denied the petition without comment. (Pet. Exh. 11.)

7       On February 1, 2008, Petitioner initiated this action, alleging his due process rights were

8  violated by the Board's re-characterization of his commitment offense, continual denial of parole based

9  on immutable circumstances including the commitment offense, and failure to give Petitioner

10 individualized consideration of his suitability for parole. (Pet. at 2-7.) Although Petitioner details his

11 disagreement with the Board's decision, he fails to allege any shortcomings in the state court rulings

12 which would provide a basis for federal habeas relief.

13 **II. Discussion**

14   **A. Legal Standards**

15      This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty

16 Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>see also</u> <u>Redd v. McGrath</u>,

17 343 F.3d 1077, 1080 n.4 (9th Cir. 2003) (provisions of AEDPA apply when a state prisoner challenges

18 constitutionality of a state administrative decision, such as denial of parole). Under AEDPA, a habeas

19 petition will not be granted with respect to any claim adjudicated on the merits by the state court unless

20 that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application

21 of clearly established Federal law, as determined by the Supreme Court of the United States...." 28

22 U.S.C. § 2254(d)(1). The statutory phrase "clearly established Federal law, as determined by the

23 Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of the Supreme

24 Court's decisions in place at the time of the relevant state-court decision. <u>Williams v. Taylor</u>, 529 U.S.

25 362, 412 (2000); <u>Smith v. Patrick</u>, 508 F.3d 1256 (9th Cir. 2007). A state court ruling provides an

26 alternative basis for habeas relief if it "resulted in a decision that was based on an unreasonable

27 determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

28 § 2254(d)(2).

1   A federal habeas corpus petition must allege a deprivation of one or more federal rights to

2   present a cognizable claim.  28 U.S.C. § 2254(a).  A state court's interpretation of state laws or rules

3   provides no basis for federal habeas corpus relief unless a federal constitutional issue is implicated.

4   Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal habeas corpus relief does not lie for errors of state

5   law, and federal courts may not reexamine state court determinations on state law issues).   Federal

6   courts may only intervene in state judicial proceedings to correct errors of federal constitutional magni-

7   tude.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (federal courts are not concerned

8   with errors of state law unless they rise to level of constitutional violation).

9   **B.  Analysis**

10   Because both the California Court of Appeal and the California Supreme Court summarily

11   dismissed Petitioner's habeas petitions, the court "looks through" the dismissals to review the "last

12   reasoned" state court decision.  Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004)(citing Bailey

13   v. Rae, 339 F.3d 1107, 1112 (9th Cir.2003).  In the present case, that decision is the one set forth by

14   the Orange County Superior Court.  (Pet. Exh. 9.)

15   **1.  Does Petitioner Have a Liberty Interest in Parole?**

16   At the outset, Respondent argues the Due Process Clause is inapplicable here because

17   Petitioner has no protected liberty interest in parole.  (Ans.¶ 10.)  Respondent suggests Petitioner's

18   failure to state a federal question deprives the court of subject matter jurisdiction.  (Ans. ¶ 10.)

19   The Supreme Court has concluded mandatory language in a state's parole scheme can create

20   a protected liberty interest in conditional release on parole.   Greenholtz v. Inmates of Neb. Penal and

21   Corr. Complex, 442 U.S. 1, 7 (1979).  Respondent relies on In re Dannenberg, 34 Cal. 4th 1061, 1087

22   (2005), for the proposition that the language of the California parole statute is *not* mandatory and there

23   is accordingly no liberty interest in parole in California.  However, this theory has been rejected by the

24   Ninth Circuit.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).

25   **2.  Was the State Court Decision Contrary to Clearly Established Federal Law?**

26   A state court's decision may be found to be "contrary to" clearly established Supreme Court

27   precedent if:  (1) "the state court applies a rule that contradicts the governing law set forth in [the

28   Court's] cases" or (2) "the state court confronts a set of facts that are materially indistinguishable from

1    a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."

2    Williams, 529 U.S. at 405-06; Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).

3          In the context of parole review hearings, the Supreme Court has clearly established federal law

4    governing the level of process required to comport with the Due Process Clause.  When an inmate is

5    afforded an "opportunity to be heard" at the parole hearing, and if parole is denied, the inmate is

6    informed "in what respect he falls short of qualifying," he has been afforded "the process...due under

7    the circumstances." Greenholtz, 442 U.S. at 16.  Petitioner does not allege any facts showing he was

8    denied Greenholt protections.  (Trav. at 7.) In fact, the transcript of the parole hearing shows Petitioner

9    was given an opportunity to be heard and the Board orally detailed to Petitioner its reasoning. (Pet.

10   Exh. 1 at 43-45.)  Further, the arguments Petitioner does make are not directed to areas settled by

11   Supreme Court jurisprudence.  The state court's decision denying the habeas petition was not made

12   "contrary to...clearly established Federal law."

13        **3.  Was the State Court Decision an Unreasonable Application of Clearly
             Established Federal Law?**

14

15        A state court decision involves an "unreasonable application" of clearly established federal law

16   "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but

17   unreasonably applies it to the facts of the particular state prisoner's case." Williams, 539 U.S. at 407;

18   Andrade, 538 U.S. 63, 75-76.  Alternatively, where the Supreme Court has not addressed a particular

19   issue or extended an established legal test to a new area of concern, habeas relief may be appropriate

20   if "the state court either unreasonably extends a legal principle from our precedent to a new context

21   where it should not apply or unreasonably refuses to extend that principle to a new context where it

22   should apply." Williams, 529 U.S. at 408; Carey v. Musladin, 549 U.S. 70 (2006).  Although Ninth

23   Circuit case law is not controlling for habeas purposes, it may be persuasive authority in determining

24   whether a state court decision is an "unreasonable application" of Supreme Court.  Van Tran v.

25   Lindsay, 212 F.3d 1143, 1154 (9th Cir. 2000), overruled on other grounds, Andrade, 538 U.S. at 75-

26   76.  In such cases, "a federal habeas court may not issue the writ simply because the court concludes

27   in its independent judgment that the relevant state-court decision applied clearly established federal

28   law erroneously or incorrectly. . . .  Rather, that application must be objectively unreasonable."

Andrade, 538 U.S. at 75-76 (internal quotation marks and citations omitted).

1       Here, the state court evaluated the Board's denial of parole using the "some evidence" standard,

2  which was developed by the Supreme Court in the context of a prison disciplinary hearing addressing

3  revocation of good time credits.  Superintendent v. Hill, 472 U.S. 445, 457 (1985).  Both the Ninth

4  Circuit and the California Supreme Court extended this review principle to parole decisions on the

5  basis that such decisions similarly affect an inmate's term of incarceration.  Biggs v. Terhune, 334 F.3d

6  910 (9th Cir. 2003); In re Rosenkrantz, 29 Cal.4th 616 (2002).  This court agrees the "some evidence"

7  standard is not "clearly established law" as defined by § 2254 with respect to parole suitability

8  evaluations.  However, the state court's application of this mode of inquiry to the parole setting cannot

9  be considered "objectively unreasonable," particularly in light of the Ninth Circuit's accordant ruling.

10 Further, although Petitioner argues against the sufficiency of the evidence relied on by the Board, he

11 never suggests the state court was "objectively unreasonable" in using the "some evidence" standard

12 to review the Board's rationale.

13      Under the "some evidence" test, a reviewing court must uphold the state's administrative

14 decision as long as it has "some basis in fact."  Hill, 472 U.S. at 456.  This standard "does not require

15 examination of the entire record, independent assessment of the credibility of witnesses, or weighing

16 of evidence.  Instead, the relevant question is whether there is *any* evidence in the record that could

17 support the [prison administrator's] conclusion."  Id. at 455-456 (emphasis added).  In its review, the

18 state court concluded the Board's decision was adequately supported by the record.  (Pet. Exh. 9.)

19      Petitioner argues the Board improperly relied on an inaccurate  characterization of his

20 commitment offense as having been undertaken in an "especially cruel, dispassionate, and calculated

21 manner demonstrating an exceptionally callous disregard for human suffering." (Pet. at 5D-5F.)  In

22 addition, Petitioner alleges the Board deprived him of individualized consideration of his suitability

23 for parole. (Pet. at 6-6K.) Petitioner attempts to demonstrate why, based on his version of events and

24 his interpretation of the inmate record, this court should substitute its own judgment for that of the

25 Board.  As discussed above, a reviewing federal court lacks the authority to do what Petitioner

26 requests.  The only question for this court is whether there is *any* reliable evidence in the record to

27 support the Board's denial.  Hill, 472 U.S. at 456.

28      Here, the state court reviewed the record in detail, noting evidence in the record supporting

1  Petitioner's claim of rehabilitation. (Pet. Exh. 9 at 3-5.) Nevertheless, the state court ruled the Board

2  did not abuse its discretion in finding the favorable evidence was outweighed by other factors

3  demonstrating Petitioner's unsuitability for release, all of which were appropriately considered by the

4  Board. 15 Cal. Code Regs. § 2402 et seq.; Pet. Exh. 9 at 3-5.  In particular, the state court discussed

5  the Board's "sensible" reliance on the circumstances of the commitment offense and failure to take

6  responsibility for the crime, noting there was evidence in the record to show "Petitioner's violent

7  actions and efforts to fabricate an alibi demonstrate a level of calculation, callousness, and disregard

8  for human suffering...." (Pet. Exh. 9 at 3.)  The Board's consideration of the commitment offense was

9  also warranted as "the motive for the crime [was] inexplicable or very trivial in relation to the

10 offense." 15 Cal. Code Regs. § 2402(c)(1); Pet. Exh. 1 at 45.  This conclusion was supported by the

11 facts of the case: Petitioner left the area of confrontation and returned armed, fired his weapon without

12 regard to public safety, and attempted to construct an elaborate alibi which he maintained for years

13 after the incident. (Pet. Exh. 1 at 43-45.)

14     Additionally, under the highly deferential standard before this court, there is some evidence

15 in the record that Petitioner's record of institutional misconduct, his psychological evaluations and

16 attitude toward the crime, and opposition to Petitioner's release by local authorities supported the

17 Board's denial of parole. (Pet. Exh. 9 at 3-5.)  While the state court determined, in light of Petitioner's

18 participation in Alcoholics Anonymous meetings and life skills programming, "there is no clear

19 evidence...to support the Board's finding of limited programming," the Board did not abuse its

20 discretion in finding Petitioner's vocational programming would be insufficient to provide him gainful

21 employment upon release. (Pet. Exh. 9 at 5, Exh. 1 at 46.)  Overall, this court finds there was evidence

22 in the record to support the Board's ultimate determination.

23     Petitioner also contends the Board failed to follow California state law in its review. (Pet. at

24 6-6K; Trav. at 17-18.)  Petitioner does not cite any clearly established *federal* law providing him

25 protection from the alleged conduct.  Further, claims based on state law are not cognizable in a federal

26 habeas petition.  See  Estelle, 502 U.S. at 68 ("it is not the province of a federal habeas court to

27 reexamine state-court determinations on state-law questions."); Lewis v. Jeffers, 497 U.S. 764, 780

28 (1990) ("federal habeas corpus relief does not lie for errors of state law.").

1   Petitioner also suggests the Board improperly denied parole based on immutable factors,

2   including the nature of the commitment offense.  (Pet. at 5G-5H; Trav. at 12-17.)  The Ninth Circuit

3   has warned against continued reliance on unchanging factors to deny parole, as doing so can turn an

4   indeterminate sentence like Petitioner's into an effective life sentence without the possibility of parole.

5   See Biggs, 334 F.3d at 916.  As the Ninth Circuit observed, denying parole based solely on factors

6   beyond the prisoner's control "runs contrary to the rehabilitative goals espoused by the prison system

7   and could result in a due process violation."  Id. at 917.  In this case, although the Board pointed to the

8   heinous nature of the offense, it relied on other factors including Petitioner's mental state, vocational

9   rehabilitation, and record of institutional reprimand.  (Pet. Exh. 9.)  The Board's decision was not

10  based solely on immutable factors and thus does not trigger the due process concerns raised by the

11  Ninth Circuit in Biggs.

12  Based on this analysis, the state court did not unreasonably extend an established legal test to

13  the parole hearing context, nor did it unreasonably apply a governing rule to the facts of Petitioner's

14  case.  Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1).

15  **4. Did the State Court Decision Involve an Unreasonable Determination of the Facts?**

16  In a review of a state court's factual determinations pursuant to § 2254(d)(2), federal courts

17  must "give great deference to the state court's factual findings."  28 U.S.C. § 2254(e)(1); Jeffries v.

18  Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)(en banc).  The state court's factual findings are "presumed

19  to be correct" and the petitioner carries the burden of rebutting the presumption with "clear and

20  convincing evidence."  28 U.S.C. § 2254(e)(1).  Notably, although state courts make findings of fact

21  in trial settings, "[i]n reviewing a parole suitability determination made by the Board of Parole

22  Hearings, a court views the record in the light most favorable to that determination."  Here, Petitioner's

23  challenge focuses solely on the conclusions drawn by the Board and even acknowledges the state court

24  made no factual findings in its administrative review.  (Trav. at 2.)  The state court was under no

25  obligation to take Petitioner's habeas allegations as true and appropriately analyzed the case based on

26  the record before the Board.  Petitioner fails to state a case for relief under 28 U.S.C. § 2254(d)(2).

27  //

28  //

1   **III.  Conclusion**

2          For the reasons stated above, the court **DENIES** the Petition for Writ of Habeas Corpus.  (Doc.

3   No. 1.)  Further, the court **DENIES** Petitioner's motion to name proper respondent as moot as the

4   court automatically substitutes the proper public officer as respondent under Fed. R. Civ. P. 25(d)(1).

5   (Doc. No. 5.)

6          **IT IS SO ORDERED.**

7   DATED:  January 6, 2009

8                                                    _____

9                                                    Hon. Jeffrey T. Miller
                                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28